Case 3:23-cr-01855-LAB   Document 31   Filed 02/02/24   PageID.62   Page 1 of 8

**PAYAM FAKHARARA**
California State Bar No. 330336
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Payam_Fakharara@fd.org

Attorneys for Mr. Cuadrado

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Edwin Cuadrado, Jr.,<br><br>    Defendant. | CASE NO.:  23-CR-1855-LAB-1<br><br>Hon. Larry Alan Burns<br>Date: February 23, 2024<br>Time: 10:00 AM<br><br>**Motion to Suppress Evidence Seized as a Result of an Unconstitutional Search Warrant** |

### I.     Introduction

On November 7, 2023, the United States sought and received a search warrant to search Mr. Cuadrado's storage unit.  23-MJ-4080-BGS, dkt. 1 ("Application") & dkt. 2 ("Search Warrant").  This was about two and a half months after the alleged incident leading to Mr. Cuadrado's arrest, and more than two months after Mr. Cuadrado had stated, post-arrest, that he had used a box cutter during an altercation with supervisors.  Application at 7.  The government sought to search Mr. Cuadrado's storage unit for a laundry list of general items like weapons, documents related to his employment and control over the storage unit, and documents that may relate to his motivation.  Application at 14.

1                              **23-CR-1855-LAB-1**
MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF AN UNCONSTITUTIONAL SEARCH WARRANT

Nevertheless, a search warrant must be predicated on a fair probability that contraband or evidence of the alleged crime will be found. A warrant also cannot be overbroad and requires a nexus between the items to be seized and the alleged crime. The search warrant in this case fails on each front and, as such, any evidence seized in connection with the warrant must be suppressed.

## II. Relevant Background[1]

On August 30, 2023, Mr. Cuadrado was arrested on one count of assault on a federal employee in violation of 18 U.S.C. § 111(a)(1)(b). Dkt. 1 (complaint). The charge against Mr. Cuadrado centered on an encounter he had five days prior with three supervisors at a U.S. Postal Service Distribution Center where he worked. On that day, Mr. Cuadrado's supervisor had followed and confronted Mr. Cuadrado at a Shell gas station, and asked Mr. Cuadrado to return to the U.S. Postal Service branch to be disciplined. Once back at the branch, in the parking lot, three supervisors approached Mr. Cuadrado to confront him. There, an altercation between Mr. Cuadrado and the supervisors ensued, and Mr. Cuadrado took out a box cutter requesting that the supervisors back off. When the supervisors did not back off, Mr. Cuadrado used the box cutter which resulted in one of the supervisors being injured in the back of the head.

After his arrest, Mr. Cuadrado agreed to make a statement. During the statement, Mr. Cuadrado discussed his belief that he was being surveilled at the U.S. Postal Service and that the supervisors were going to kill him. He stated that he used a box cutter during the incident which led to the supervisor's injury, and then discarded the box cutter somewhere by the side of Highway 15. Application at 8. He also stated that he used his phone to record a portion of the altercation, but that he discarded the phone and/or SIM card over a fence near his storage unit. *Id.*

---

[1] For the purposes of this motion, Mr. Cuadrado has relied in large part upon discovery provided by the government, as well as the government's search warrant application. He reserves the right to challenge this evidence if presented at trial.

     Based on information they learned during the post-arrest statement, a United States Postal Inspector sought a warrant to search Mr. Cuadrado's storage unit. Application. In the Application, the Inspector believed probable cause existed to search the storage unit because, "[i]t is common for individuals to rent storage units such as the Subject Property to store items such as clothing, weapons, documents, records, and other belongings" and that "[s]uch items can constitute evidence or instrumentalities of crimes." Application at 10. The Inspector added that, "CUADRADO admitted . . . disposing of his phone, SIM card, or both his phone and SIM card at Trojan Storage following the August 25, 2023, incident" and that "records show CUADRADO accessed the Trojan Storage facility multiple times less than two hours after the incident[.]" *Id.*

     The Application sought the following items to be seized:

    a. Any items that resemble or can be used as a weapon;

    b. Papers, documents, and effects tending to show dominion and control over the Subject Property;

    c. Papers, documents, and effects relating to employment with the United States Postal Service;

    d. Papers, documents, and effects tending to show planning, premeditation, or motivation for violence and threats;

    e. Papers, documents, and effects tending to show the purchase or possession of any weapons; and

    f. Any clothing or other items appearing to contain blood or blood-like stains.

Application at 14.

### III.    Argument

     Evidence seized as a result of the search warrant must be suppressed for three reasons. First, the warrant application failed to establish probable cause where the

government lacked any information that evidence of the crime would be found inside Mr. Cuadrado's storage unit. Second, the warrant authorized an overbroad search into intimate corners of Mr. Cuadrado's life without intelligible limits. Third, the warrant lacks a nexus between items to be seized and any alleged criminal conduct.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *United States v. Jones*, 565 U.S. 400, 404 (2012). The Fourth Amendment gives protections when warrants are sought. To support the issuance of a search warrant, an affiant must present evidence that gives the judge a "substantial basis for concluding probable cause existed" based on the totality of the circumstances. *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (internal quotation marks omitted). Probable cause to search a location exists if, based on the totality of the circumstances, a fair probability exists that evidence of a crime will be found. *United States v. Perkins*, 850 F.3d 1009, 1119 (9th Cir. 2017).

Moreover, a warrant is not valid unless it is specific. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that a warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (quoting *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991)); *accord United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). This requirement protects people against "exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976).

Lastly, to be constitutional, a warrant must set forth a "nexus . . . between the item to be seized and criminal behavior." *Warden, Maryland Penitentiary v.*

1  *Hayden*, 387 U.S. 294, 307 (1967).  In other words, there must be a relationship between the items sought and the place law enforcement requests to search for them. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

### A. The search warrant lacked probable cause.

First, the search warrant lacked probable cause because, based on the totality of the circumstances, there was not a fair probability that evidence of the alleged crime would be found in Mr. Cuadrado's storage unit.

Prior to the issuance of the search warrant, no evidence existed suggesting that additional evidence of the charged crime—an assault that occurred at a Distribution Center—could be found inside Mr. Cuadrado's storage unit.  The alleged crime in this case occurred on August 25, 2023, at a U.S. Postal Service's Distribution Center, where Mr. Cuadrado was alleged to strike a supervisor using a box cutter.  Application at 5.  Just five days later, Mr. Cuadrado was arrested and, during a post-arrest statement, seemingly admitted to using a box cutter that resulted in injuries to a supervisor.  Application at 6.  He also stated that he threw the box cutter near a highway and discarded his phone over a fence near a storage unit.  So, on August 30, 2023, after Mr. Cuadrado's statement, the government knew that Mr. Cuadrado had provided details of the altercation and his use of a box cutter, and details of where he had discarded the box cutter and his phone.  During his statement, Mr. Cuadrado made no mention that any additional pieces of evidence were stored in his storage unit.

Nevertheless, the U.S. Postal Inspector sought a warrant to search Mr. Cuadrado's storage unit hoping to find the weapon (or "any" weapon, as the Application puts it) and makes no mention of a hope to seize the phone that was

supposedly tossed at a fence near the storage unit. Application at 14. The Application makes no statements as to how any of the items the government wished to seize would advance the elements necessary to prove an assault case. But "all data necessary to show probable cause . . . must be contained within the four corners of a written affidavit given under oath." *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971); *see also United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (en banc). Beyond saying that Mr. Cuadrado had accessed his storage unit several times after the incident, and a general statement that it was "common" for people to store items in storage units that "can constitute evidence or instrumentalities of crime," nothing in the Application in November 2023 demonstrates a fair probability that evidence of assault in August 2023 would be found at the storage unit. Without more, the search warrant lacks probable cause and is unconstitutional.

### B. The warrant was overbroad, lacked particularity, and amounted to a general warrant.

Next, the warrant application fails to describe, in particularity, what items used in the alleged crime would be seized. Indeed, "a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Mass. v. Sheppard*, 468 U.S. 981, 988 n.5 (1984).

The warrant application hoped to seize general categories of items without any specificity to items used in the alleged offense. When viewing the items the application discusses, the generality is clear. For example, the application describes that Mr. Cuadrado had stated that he had discarded the box cutter near a highway. But the application aims to seize "[a]ny items that resemble or can be used as a weapon." Application at 14. Nothing in the application suggests that other weapons were used during the alleged offense, or that any other weapons that may be found in Mr. Cuadrado's storage unit had any connection to the allegations.

Moreover, the application describes an aim to seize "[p]apers, documents, and effects" tending to show "dominion and control over the Subject Property," tending to show "planning, premeditation, or motivation for violence and threats," and demonstrating Mr. Cuadrado's "employment with the United States Postal Service." *Id.* Yet nothing in the application discusses why Mr. Cuadrado's control over the storage unit, his employment at U.S. Postal Service, or any planning, premeditation, or motivation, relate to any of the elements of the alleged offense. This sort of "tending to show" list sweeps well beyond the suspected criminal activity that took place at a U.S. Postal Service Distribution Center. The warrant instead resembles an exploratory rummaging into an intimate part of Mr. Cuadrado's life—his personal storage unit—where the government, with no specificity, may comb through anything in the storage unit in hopes of finding something, anything, that may link back to the alleged crime. Accordingly, the warrant is unconstitutionally overbroad.

### C. The Application lacks a nexus between the items to be seized and the alleged crime.

Lastly, the Application fails to connect how any of the items it wished to seize were linked to the alleged crime. The application was required to reasonably describe what items would have been found at Mr. Cuadrado's storage that were linked to his alleged offense. *See, e.g.*, *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) ("[W]e have indicated that a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." (internal quotation marks omitted)); *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) ("Put differently, the application must give someone of 'reasonable caution' reason to believe that evidence of a crime will be found at the place to be searched."). Again, in looking at the items the Application aimed to seize, the

Application leaves one guessing how any of the items related to the elements of the alleged offense. For example, the Application did not aim to seize the weapon used in the offense; it instead sought to seize "any" items that resemble or can be used as a weapon. Application at 14. Moreover, the Application's laundry list of "effects relating to"/"effects tending to show" have no connection with the elements of an assault, where the elements are not proven by any of the items that could be seized in relation to this list.

That Mr. Cuadrado was a suspect to the alleged conduct did not give the government authority to intrude into his personal belongings. There needed to be reason to believe that specific things were going to be found in his storage unit that were linked to the alleged conduct. *See Zurcher*, 436 U.S. at 556. Without more, the Application leaves any reasonable reader guessing as to how any of the items listed had a nexus to the alleged offense.

### IV. Conclusion

For the reasons stated above, this Court should grant this motion and suppress all evidence that was attained as a result of the unconstitutional search warrant. In the alternative, this Court should conduct an evidentiary hearing to resolve any material facts that may be disputed.

Respectfully submitted,

Dated: February 2, 2024   *s/ Payam Fakharara*
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cuadrado
Email: Payam_Fakharara@fd.org