1  TARA K. McGRATH
   United States Attorney
2  JAMES REDD
   Illinois Bar No. 6315678
3  ALICIA P. WILLIAMS
   California Bar No. 262823
4  Assistant U.S. Attorneys
   Office of the U.S. Attorney
5  880 Front Street, Room 6293
   San Diego, CA 92101-8893
6  Tel: (619) 546-9661/8917
   Email: james.redd@usdoj.gov/alicia.williams@usdoj.gov
7
8  Attorneys for the United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN CUADRADO JR.,<br><br>Defendant. | Case No. 23-cr-1855-LAB<br><br>**UNITED STATES' MOTIONS** *IN LIMINE* **TO:**<br><br>A. **ADMIT EXPERT TESTIMONY**<br>B. **ADMIT EVIDENCE OF DEFENDANT'S METHAMPHETAMINE USE**<br>C. **EXCLUDE WITNESSES DURING TRIAL**<br>D. **PRECLUDE DEFENDANT'S EVIDENCE NOT PREVIOUSLY PRODUCED AND NOTICED**<br>E. **LIMIT OPINION TESTIMONY FROM LAY WITNESSES**<br>F. **PRECLUDE DEFENDANT FROM ELICITING SELF-SERVING HEARSAY**<br>G. **PROHIBIT REFERENCE TO CONSEQUENCES OF VERDICT**<br>H. **EXCLUDE EVIDENCE OF DEFENDANT'S GOOD CONDUCT AND CHARACTER;**<br>I. **PROHIBIT REFERENCE TO FAILURE TO CALL EQUALLY AVAILABLE WITNESSES** |

|   |   |
|---|---|
|   | **J. ALLOW VOLUNTARY INTOXICATION JURY INSTRUCTION**<br>**K. ALLOW SPECIAL VERDICT FORM**<br>DATE: February 23, 2024<br>TIME: 10:00 a.m.<br>**The Honorable Larry A. Burns** |

Trial in this matter is scheduled to begin on February 28, 2023. The United States of America anticipates that its case-in-chief will last no more than one day and moves *in limine* as outlined below. The United States will confer with the defense about stipulations which may narrow the testimonial evidence at trial.

**I**

**STATEMENT OF THE CASE**

On September 7, 2023, defendant Edwin Cuadrado Jr. ("Defendant") was charged in a Indictment with assault on a United States Postal Service Employee, in violation of 18 U.S.C. § 111(a)(1). [ECF No. 16.] On September 12, 2023, Defendant appeared before United States Magistrate Judge Willam V. Gallo and was arraigned on the Indictment, and a motion hearing and trial setting was scheduled for October 23, 2023. [ECF No. 18.] On October 2, 2023, the United States filed motions for an order of competency, a psychiatric examination, and for reciprocal discovery. [ECF No. 21.] That same day, Defendant filed separate motions to compel discovery, to preserve evidence, for leave to file further motions, and a notice of an insanity defense and expert evidence. [ECF No. 22.]

On October 16, 2023, on this Court's own motion this Court continued the motion hearing previously set for October 23, 2023 to November 7, 2023. [ECF No. 25.] On October 27, 2023, Defendant filed a response in opposition to the United States motions for an order of competency, a psychiatric examination, and for reciprocal discovery. [ECF

No. 26.] On October 31, 2023, the United States filed a response in opposition to Defendant's motions to compel discovery, to preserve evidence, for leave to file further motions, and notice of an insanity defense and expert evidence. [ECF No. 27.]

At the motion hearing and trial setting on November 7, 2023, Defendant requested a continuance of the motion hearing while they awaited a doctor's report. [ECF No. 29.] This Court granted the continuance, continued the motion hearing to December 12, 2023, and excluded time. [ECF No. 29.] At the motion hearing and trial setting on December 12, 2023, this Court denied the United States motion for order of competency, but granted the Government's motion for a psychiatric examination of Defendant. [ECF No. 30.] This Court ordered the United States to provide It's psychiatric Report to defense by January 26, 2024. [ECF No. 30.] This Court also granted in part Defendant's motion to compel discovery, as to Defendant's cellular phone download. [ECF No. 30.] This Court set trial for February 27, 2024, and excluded time through the motions *in limine* hearing scheduled for February 23, 2024. [ECF No. 30.] Trial is currently set for February 28, 2024. [ECF No. 34.]

## II

## FACTUAL SUMMARY

**A.  August 25, 2023: Defendant stabbed B.A. in head at a United States Postal Service facility and left the facility before police arrived.**

On August 25, 2023, at approximately 1:30 p.m., Defendant arrived for work at the United States Postal Service ("USPS") facility located at 11251 Rancho Carmel Drive, San Diego, California 92150 (the "Distribution Center"). Defendant was employed with the USPS as a Motor Vehicle Operator responsible for, among other things, transporting mail in a large semitrailer that he drove.

At approximately 5:25 p.m., Defendant parked his assigned USPS semitrailer on the road near a Shell gas station located at 12174 Carmel Mountain Road. The Shell gas station

is just beyond the exit gates of the Distribution Center. While Defendant was at the Shell station, USPS Supervisor Jose Rodriguez ("Rodriguez") observed Defendant's USPS vehicle and entered the Shell station to remind Defendant that USPS employees are not supposed to park semitrailers where Defendant had parked at the Shell station.

The discussion between Defendant and Rodriguez escalated to a verbal confrontation. In response to Rodriguez telling Defendant he was not supposed to park his trailer there at the Shell station, Defendant responded "I don't give a shit." Shortly thereafter, Defendant threw soft drink bottles at Rodriguez's car before pushing Rodriguez in the chest. Both Defendant and Rodriguez returned to the Distribution Center in their respective vehicles. As they returned to the Distribution Center, Rodriguez notified USPS Supervisor Chester Perkins about the Shell station incident with Defendant.

At approximately, 5:36 p.m., Defendant returned to the Distribution Center. Defendant parked his semitrailer in the employee parking lot and walked to his minivan, which he opened and search through for approximately one minute before returning to the semitrailer.

Defendant then drove and parked the semitrailer in a different area of the main employee parking lot where he was first approached by Perkins and another on-duty USPS Supervisor, B.A., and shortly thereafter, by Rodriguez. Rodriguez and Perkins asked for Defendant to return his employment badge. Defendant responded by stating, "I don't gotta give you shit." Defendant then shoved Rodriguez, pulled out a knife, and started to swing the knife at Rodriguez. Rodriguez injured his calf muscle during the confrontation. After swinging the knife at Rodriguez, Defendant began swinging the knife at B.A. and stabbed B.A. in the head multiple times. Defendant then pushed B.A. into the semitrailer.

After the stabbing, Defendant walked back to his minivan and departed the employee parking lot while giving a hand gesture to the USPS camera.

San Diego Police Department ("SDPD") Officers and paramedics responded to an emergency call for a stabbing at the Distribution Center. Upon arrival, police observed a

4

puddle of blood where B.A. had been stabbed. Defendant was identified by multiple witnesses as the person who stabbed B.A.. Paramedics transported B.A. to the hospital where his stabbing wounds were sutured.

**B.      August 30, 2023: Defendant was arrested by SDPD Officers and admitted during his post-arrest interview to stabbing B.A..**

On August 30, 2023 at approximately 5:00 a.m., patrolling SDPD Officers responded to a reported disturbance involving a weapon at 9455 Clairemont Mesa Boulevard in San Diego. While at the location, Officers observed Defendant pacing outside of a Chase Bank. Officers contacted and arrested Defendant after a records search revealed Defendant was wanted for a violation of California Penal Code §245(a)(1) – assault with a deadly weapon, based on the August 25, 2023 stabbing at the Distribution Center. A search of Defendant incident to his arrest revealed him to be in possession of a drug pipe, a baggie of suspected crystal methamphetamine, and a knife.

A forensic chemist subsequently examined the methamphetamine seized from Defendant. The aggregate weight of the methamphetamine sample was 3.45 grams. The chemical analysis revealed the sample has a purity of 98%, plus or minus 3%.

Shortly after his arrest, Defendant was interviewed by a USPS Postal Inspector and an SDPD detective. During that recorded interview, Defendant stated he thought the three men were going to beat him up and admitted that he stabbed one of the three USPS supervisors on August 25, 2023.

On November 8, 2023, Defendant was interviewed and examined by Dr. Jeff Victoroff at the request of Defendant's attorneys. Dr. Victoroff, based on his evaluation and review of documents he was provided by Defendant's attorneys, produced a report containing opinions regarding Defendant's mental state at the time Defendant stabbed Aficial. Specifically, Dr. Victoroff's opinion is: (1) that Defendant suffered from

schizophrenia at the time he stabbed Aficial; and (2) Defendant was unable to appreciate the nature and qualify of stabbing Aficial.

On January 8, 2024, Dr. Nicolas Badre conducted a psychiatric evaluation of Defendant at the government's request. Based on his evaluation of valuation of Defendant and review of documents, Dr. Badre produced a report that Defendant has a substance induced psychotic disorder rather than a primary psychotic disorder. Dr. Badre's opinion includes that Defendant was chronically using methamphetamine around the time of the offense and that his primary condition is methamphetamine use disorder. Finally, Dr. Badre's opinion is that Defendant was capable of understanding the nature and quality of his act and of distinguishing right from wrong when he stabbed Defendant.

## III

## **MOTIONS *IN LIMINE***

**The United States moves *in limine* for the following evidentiary and procedural rulings prior to the beginning of trial.**

A.   **Admit Expert Testimony**

On October 2, 2023, Defendant formally noticed his intent to introduce an insanity defense at trial. On February 6, 2024, pursuant to Rule 16(b)(1)(C), Defendant provided notice that he intends to introduce evidence at trial pursuant to Federal Rules of Evidence 702, 703, and 705. Specifically, intends to introduce expert testimony from Dr. Victroff that Defendant suffers from Schizophrenia. Defendant also plans to elicit testimony from Dr. Victoroff that Schizophrenia can interfere with a person's perception of reality, such that the person may be unable to appreciate the nature and quality of their acts.

Should the Defendant introduce expert testimony from Dr. Victoroff, the United States should be permitted to also introduce similar expert testimony. "When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence:

testimony from an expert who has also examined him." *Kansas v. Cheever*, 571 U.S. 87, 94 (2013).

On December 12, 2023, following Defendant's psychiatric evaluation, this Court granted the United States' motion for Its own psychiatric evaluation of Defendant. This Court also ordered the United States to provide Defendant a copy of the psychiatric report by January 26, 2024. The United States retained Dr. Nicolas Badre to evaluate Defendant. On January 25, 2024, the United States provided a copy of Dr. Badre's signed reports to Defendant. On February 6, 2024, in accordance with 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the United States filed a notice with this Court indicating Its intent to offer rebuttal expert testimony pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence.

At trial, Dr. Badre is expected to testify to Defendant's mental state at the time of the offense. He will discuss his review of the case file, including Defendant's behavior leading up to, during, and after the incident. He will explain the process for evaluating criminal defendants to determine sanity at the time of an offense. He will also explain the various tests he conducted on Defendant during his general psychiatric interview of Defendant. Dr. Badre is also expected to testify that, in his opinion, Defendant does not have Schizophrenia and that instead, Defendant's correct diagnosis is methamphetamine use disorder, in remission, and substance-induced psychosis, in remission. Dr. Badre will also testify that in his opinion, with reasonable medical certainty, Defendant was capable of understanding the nature of his act and of distinguishing right from wrong at the time of the commission of the offense. Dr. Badre's testimony is relevant as it goes to the central issue of Defendant's insanity defense, whether he could appreciate the nature and quality or wrongfulness of his actions. His testimony would certainly be probative under Federal Rules of Evidence 401, as it would tend to make a fact of consequence more or less probable. Here, that fact of consequence, whether Defendant could appreciate the nature and quality or wrongfulness of his actions is the central issue in this case. Preventing the

United States from offering rebuttal expert testimony could unfairly tip the scale in favor of Defendant, as it could create an inference that Defendant's claim of his mental condition is true because it is uncontradicted. *See Cheever*, 571 U.S. at 95.

### B. Admit Evidence Of Defendant's Methamphetamine Use

In response to Defendant's insanity claim, the United States intends to offer evidence that Defendant was a chronic methamphetamine user at the time of the offense and likey under the influence of methamphetamine. This evidence should not be treated as "other crimes" evidence under 404(b), as the evidence is inextricably intertwined with the charged crime, specifically Defendant's insanity defense. Voluntary intoxication cannot contribute to nor cause the mental defect relied upon to establish the insanity defense. *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir. 1990). The United States intends to introduce this evidence to rebut Defendant's claims that his mental defect was organic. There is ample evidence in the record that Defendant was a chronic methamphetamine user. First, Defendant admitted to using methamphetamine two days before the incident. Dr. Badre will testify that methamphetamine has a plasma half-life of 12 to 34 hours, the duration of its effect commonly persists beyond 24 hours. He will also testify that the psychiatric effects of methamphetamine, including aggression, may last for days. Additionally, Defendant was observed on video appearing to smoke a substance in a glass bong less than an hour after the attack. At the time of his arrest, officers found a bong and methamphetamine in Defendant's possession. One of the first things Defendant told officers post-arrest was that he burned his hands trying to make his own methamphetamine. He also admitted to smoking methamphetamine just two days before his arrest. By Defendant's own admissions alone, he is a chronic methamphetamine user. When Defendant seeks to pursue an insanity defense, his voluntary intoxication is relevant, as the Ninth Circuit has clearly established that "[i]nsanity that is in *any* part due to a defendant's voluntary intoxication is not beyond his control" and thus not amenable to an insanity

defense at trial. *Id.* at 1122; *United States v. Burnim*, 576 F.2d 236, 237 (9th Cir. 1978) (rejecting insanity defense in "combination" case).

**C.     Exclude Witnesses During Trial**

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. An exception to this rule exists for "a person whose presence a party shows to be essential to presenting the party's claim or defense." *Id.* The case agent in the present matter – United States Postal Inspector Meng Tsai– has been critical in moving the investigation forward to this point and is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States. The United States also requests Dr. Badre be permitted to remain in the courtroom during the presentation of evidence as well. Dr. Badre is essential to rebutting Defendant's insanity defense. "[A]n expert who is not expected to testify to facts, but only assumes facts for purposes of rendering opinions, might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions." *United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002) (quoting *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 629 (4th Cir. 1996)) Although, the United States has requested reciprocal discovery, the United States has not received any witness statements from Defendant other than that of Dr. Victoroff. The United States expects Defendant to call multiple witnesses that will testify to their interactions with Defendant. Hearing the trial testimony may very likely allow Dr. Badre to formulate or explain his opinions. The United States would not oppose Dr.Victoroff also remaining in the courtroom during trial testimony. The United States requests that all other testifying witnesses be excluded during trial pursuant to Rule 615.

**D.     Preclude Defendant's Evidence Not Previously Produced and Noticed**

The United States previously filed a request for reciprocal discovery. *See* ECF No. 21. However, as of the date of the preparation of these motions, Defendant has only produced discovery related to Dr. Victoroff and his examination of Defendant. The United States again moves for an order requiring Defendant to provide all reciprocal discovery to

which the United States is entitled under Rules 16(b) and 26.2. This includes, but is not limited to, the disclosures mandated by Rule 16(b)(2), namely all exhibits and documents that Defendant "intends to introduce as evidence in chief at the trial;" disclosures mandated by Rule 26.2 of the Federal Rules of Criminal Procedure (requiring production of prior statements of all witnesses, except those of defendant); and a written summary of the names, anticipated testimony, and bases for opinions of any experts Defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

The United States requests that Defendant permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requests that Defendant disclose written summaries of testimony that Defendant intends to use as evidence at trial under Federal Rules of Evidence 702, 703, or 705.

Additioanally, the United States expressly requests the court preclude any opinion testimony from other medical proffessionals including the doctors at the MCC. Defendant has not provided notice of of any expert witness other than Dr. Victoroff. Accordingly, Defendant should not be permitted to introduce any additional expert testimony. Should Defendant attempt to introduce any other evidence subject to Rules 16(b) and 26.2 at trial, the United States intends to object and ask the Court to preclude such evidence.

**E.     Limit Opinion Testimony by Lay Witnesses**

If a witness is not testifying as an expert, the witness may not provide testimony in the form of an opinion based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702. *See* Federal Rule of Evidence 701. The United States anticipates Defendant may attempt to elicit testimony from lay witnesses, including postal employees, about Defendant's mental state at or near the time of the offense. These

10

witnesses should not be permitted to testify as to whether they believed Defendant to have any mental disease or defect as such an assessment falls squarely within the scope of 702.

## F. Preclude Defendant From Eliciting Self-Serving Hearsay

The United States produced in discovery an audio recording of statements made by Defendant. While the United States may introduce portions of this statement at trial as party admissions under Federal Rule of Evidence 801(d)(2), it is well-established that Defendant may not offer his own out-of-court statements into evidence or elicit them on cross-examination.

### 1. Defendant's out-of-court statements are hearsay.

When offered by the defense, a defendant's out-of-court statements constitute inadmissible hearsay because they are offered by, not against, the party to whom the statement is attributable. Federal Rule of Evidence 801(d)(2). The defendant is not entitled to offer non-self-inculpatory statements even if they were made contemporaneously with other self-inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The self-incriminating statements, when offered by the United States, are admissions by a party-opponent and are therefore not hearsay. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). However, the non-self-inculpatory statements are inadmissible hearsay when offered by the defense. *See id.*

### 2. The Rule of Completeness does not allow Defendant to introduce his own out-of-court statements.

The Rule of Completeness provides a limited exception to this principle that does not apply here. This common law doctrine is codified in Federal Rule of Evidence 106, which states that, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 does not, however, give a defendant the unlimited right to introduce other portions of his statements that are inadmissible hearsay. *See United States v. Collicott*, 92 F.3d 973, 983 (9th Cir.1996)

(finding that "rule 106 'does not compel admission of otherwise inadmissible hearsay evidence'") (quoting Phoenix Associates III v. Stone, 60 F.3d 95, 103 (2d Cir.1995)).

### 3. The Court may limit cross-examination to prohibit hearsay.

This Court may impose reasonable limits on Defendant's cross-examination of the United States' witnesses without violating the Confrontation Clause. *United States v. Ortega*, 203 F.3d 675, 682-83 (9th Cir. 2000), citing *United States v. Dees*, 34 F.3d 838, 843 (9th Cir.1994). Moreover, Defendant "should not be allowed to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination." *Id.* at 683, citing *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). If Defendant would like to admit his own self-serving statements, he should take the stand, make those statements, and be subject to cross-examination. The United States therefore requests that this Court prohibit Defendant from introducing his own statements into evidence through the United States' witnesses unless a hearsay exception applies.

## G. Prohibit Reference To Consequences of Verdict

Defendant may wish to raise potential penalties he faces if convicted. Defendant may seek to discuss the consequences following a finding of insanity, specifically that Defendant would be committed to medical facility. It is inappropriate for a jury to be informed of the consequences of their verdict. *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991). Further, information about penalties and punishment draws the jury's attention away from its chief function as the sole judge of the facts, opens the door to compromised verdicts, and confuses the issues to be decided. *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995). In Federal court, the jury is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. *See* 9th Cir. Crim. Jury Instr. § 6.22 (2022). Any such argument or reference would be an improper attempt to unduly influence the jury through sympathy for Defendant and to prejudice the jury against the United States. *See id.*, § 6.1. Accordingly, the United States hereby moves the Court to prohibit any reference to the

consequences of a finding of insanity, potential penalty, or punishment by defense in the questioning of witnesses, as well as in opening statement and closing argument.

## H. Exclude Evidence Of Defendant's Good Conduct And Character

The Government also moves to preclude Defendant from attempting to introduce testimony regarding any specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987). Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion, except that "a defendant may offer evidence of a defendant's pertinent trait, and . . . the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). Thus, a character witness cannot offer specific instances of conduct by Defendant which would tend to support the reputation of Defendant. *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979) (holding that character witnesses must restrict their direct testimony to appraisals of defendant's reputation); *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony . . . , evidence of specific acts is generally inadmissible"). Consequently, the Government moves to prohibit Defendant from introducing testimony from any character witness regarding a specific instance of Defendant's conduct.

## I. Prohibit Reference To Failure To Call Equally Available Witnesses

The United States requests that the Court prohibit Defendant from making references to, or arguments about, the United States' failure to call any witness that is equally available to both parties. The Ninth Circuit has held that a trial court should instruct the jury regarding a "missing witness" only "if two requirements are met: (1) the party seeking the instruction must show that the witness is peculiarly within the power of the other party and (2) under the circumstances, an inference of unfavorable testimony against the non-moving party from an absent witness is a natural and reasonable one." *United States v. Ramirez*, 714 F.3d 1134, 1137 (9th Cir. 2013).

While certain witnesses—such as the United States Postal Employees—are employees of the Federal Government, they are equally available to be called by both parties. No witness has an agreement with the United States to testify or is otherwise compelled to cooperate with the prosecution in this case. In *United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982), the Ninth Circuit found no error in the refusal of the district court to permit defendant's counsel to argue to the jury that it could draw an unfavorable inference against the United States based on the failure of a witness to testify. *Id.* at 591. In *Bramble*, the prosecution made it clear that they did not intend to call a particular witness. *Id.* Defendant's attorney interviewed the witness and decided not to call the witness at trial. *Id.* The Court reasoned that if the witness's testimony was favorable, Defendant's attorney would have called the witness to testify, and permitting argument of an unfavorable inference against the prosecution based on the witness' failure to testify would be misleading to the jury, and mere gamesmanship. *Id.* at 592.

### J. Allow Voluntary Intoxication Jury Instruction

The United States anticipates introducing evidence that Defendant was a chronic user of methamphetamine at the time of the offense. The United States requests the Court instruct the jury that voluntary intoxication is not a defense to a general intent crime. Violation of § 111 is a general intent crime in this circuit. *United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989). Among other things, this means that voluntary intoxication is not a defense, *id.*, and that § 111(b) does not require an intent to cause the bodily injury. *United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997).

Further, Defendant has notified the government he intends to present an insanity defense at trial. Voluntary intoxication cannot contribute to nor cause the mental defect relied upon to establish the insanity defense. *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir. 1990). This is true even in cases where the insanity was caused partly by organic brain defect and partly by voluntarily intoxication—so called "combination" cases. The Ninth Circuit has clearly established that "[i]nsanity that is in *any* part due to a defendant's voluntary intoxication is not beyond his control" and thus not amenable to an insanity

defense at trial. *Id.* at 1122; *United States v. Burnim*, 576 F.2d 236, 237 (9th Cir. 1978) (rejecting insanity defense in "combination" case). The United States requests the Court also instruct the jury that Defendant is not permitted to rely upon an insanity defense where Defendant's insanity in any part is due to voluntary intoxication.

K. **Allow Special Verdict Form**

Pursunt to 18 U.S.C. § 4242(b), the United States requests a special verdict form instructing the jury to find Defendant (1) guilty; (2) not guilty; or (3) not guilty only by reason of insanity.

IV

**CONCLUSION**

For the foregoing reasons, the United States requests the Court grant the United States' motions *in limine*.

DATED: February 16, 2024                     Respectfully submitted,

                                                                          TARA K. McGRATH
                                                                          United States Attorney

                                                                          */s/ Alicia . Williams*
                                                                          ALICIA P. WILLIAMS
                                                                          JAMES A. REDD
                                                                          Assistant United States Attorneys